UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------- X
       :
BRADLEY JOHNSON,       :
       :
                        Plaintiff,       :       1:21-cv-03262-GHW
       :
                  -against-       :       MEMORANDUM OPINION
       :                 AND ORDER
IRONSHORE SPECIALTY INSURANCE       :
COMPANY, AXIS INSURANCE COMPANY,       :
ILLINOIS UNION INSURANCE COMPANY, and       :
WESTCHESTER SURPLUS LINES INSURANCE       :
COMPANY,       :
       :
                      Defendants.       :
       :
------------------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/28/2022

GREGORY H. WOODS, District Judge:

      Bradley Johnson, the former President and CEO of now-bankrupt SportCo Holdings, Inc. ("SportCo"), seeks a declaratory judgment that his four insurance carriers are obligated to defend and indemnify him in two state court lawsuits (the "SportCo Actions"). Because Plaintiff's claims as to two of his insurance carriers are not ripe, the Court dismisses the claims against them. The Court also dismisses Plaintiff's breach of contract claim against Westchester Surplus Lines Insurance Company (hereinafter "Westchester") because he failed to allege that he performed his obligations under the agreement. However, Plaintiff's declaratory action against Westchester as to the advancement of defense costs is ripe for adjudication.

1

I.      BACKGROUND

    A.      Facts[1]

Mr. Johnson is the former President and Chief Executive Officer of SportCo.  FAC ¶ 3. "SportCo is a national hunting and sporting goods distributor."  *Id.* ¶ 13.  Wellspring Capital Management LLC, Wellspring Capital Partners IV, L.P., WCM GenPar IV, L.P., and WCM Gen Par IV GP, LLC (collectively, the "Wellspring Entities") were SportCo's equity owners.  *Id.* at Ex. A (the "S.C. Compl.").  In 2012 and 2013, SportCo's subsidiary Ellet Brothers, LLC ("Ellet") and Ellet's subsidiaries (collectively, the "Borrowers"), borrowed $160 million from Prospect Capital Corporation ("Prospect").  *Id.* ¶¶ 11, 14.  The Borrowers defaulted on their $160 million loan from Prospect on December 13, 2018.  S.C. Compl. ¶ 66.  "On June 10, 2019, SportCo filed for voluntary bankruptcy relief in the United States District Court for the District of Delaware."  FAC at ¶ 16.

According to Prospect, "rather than using the funds to invest in the business, SportCo directors and officers caused the Borrowers to pay the Wellspring Entities and others most of the loan proceeds.  As a result, [the] Borrowers became insolvent and defaulted on the loans."  *Id.* ¶ 14. "Prospect sought recovery of the funds under the South Carolina fraudulent transfer statute.  It also asserted claims for breach of fiduciary duty against SportCo officers and directors, alleging mismanagement of the company . . . , including the purchase of AcuSport, a competing firearms distributor."  *Id.* ¶ 15; *see also Friedman v. Wellspring Capital Management, LLC, et al.*, Case No. 19-80071-dd (Bank. D.S.C.), (the "South Carolina Action").  Prospect also accused Mr. Johnson "of negligently misrepresenting certain aspects of the AcuSport transaction."  *Id.*  "The alleged damages in the [South Carolina Action] are more than $188 million."  *Id.* ¶ 17.

---

[1] The facts are drawn from Plaintiff's First Amended Complaint ("FAC"), Dkt. No. 45, and are accepted as true for the purposes of this motion to dismiss.  *See, e.g.*, *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).  But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The Trustee in the United States Bankruptcy Court for the District of Delaware also filed an action against Mr. Johnson and the Wellspring entities. *See Friedman v. Wellspring Capital Management, LLC, et al.*, Case No. 20-50554-LSS (Bank. D. De.) (the "Delaware Action"). In the Delaware Action, Mr. Johnson is alleged to have breached his fiduciary duties and to have fraudulently enriched himself at the expense of SportCo. FAC ¶ 24–25; *see also* FAC Ex. B, Delaware Complaint. The amounts at issue in the Delaware Action are considerably less than those in the South Carolina Action. *Id.*; *see e.g.*, FAC Ex. B, Delaware Complaint ¶ 179 (challenging an allegedly fraudulent transfer to Mr. Johnson in the amount of $112,500); ¶ 232 (challenging an allegedly fraudulent transfer in the form of a salary increase to Mr. Johnson in the amount of $500,000); ¶ 280 (challenging an allegedly fraudulent transfer in the form of quarterly bonuses in the amount of $500,000).

Mr. Johnson moved to dismiss the allegations against him in the SportCo Actions. FAC ¶¶ 18, 26. Mr. Johnson was successful in the South Carolina Action, and he was dismissed from that case. *See id.* ¶ 18. His motion to dismiss the Delaware Action is still pending. *Id.* ¶ 26.

### 1. Mr. Johnson's Declaratory Judgment Action

Mr. Johnson seeks a declaration that he is entitled to insurance coverage for the SportCo Actions. He brings this declaratory judgment action with respect to four insurance policies: (1) a $10,000,000 primary insurance policy (the "Ironshore Policy"), issued by Ironshore Specialty Insurance Company ("Ironshore"); (2) a $10,000,000 first excess policy (the "AXIS Policy"), issued by AXIS Insurance Company ("AXIS"); (3) a $10,000,000 second excess policy (the "Illinois Union Policy"), issued by Illinois Union Insurance Company ("Illinois Union"); and (4) a $5,000,000 excess difference-in-conditions policy (the "Westchester Policy"), issued by Westchester. *See id.* Ex. C, Ironshore Policy, Declarations, Item 6; *Id.* Ex. D, AXIS Policy, Declarations, Item 3; *Id.* Ex. F, Illinois Union Policy, Declarations, Item 6; *Id.* Ex. E, Westchester Policy, Declarations, Item III.

AXIS, Illinois Union, and Westchester (together, the "Excess Carriers") "issued policies of insurance that are excess to the primary insurance coverage available to Plaintiff under the Ironshore Policy." FAC ¶ 47.

### 2. The Insurance Policies

The Ironshore Policy has a $10,000,000 liability limit. *Id.* Ex. C, Ironshore Policy, Declarations, Item 6. The Ironshore Policy "provides Management Liability coverage for any Loss, including Defense Costs, incurred by an Insured Person arising from a covered Claim made against such Insured Person." *Id.* ¶ 30; *see also* FAC Ex. C, Ironshore Policy, Section 1.

The AXIS Policy has a $10,000,000 liability limit. *See* FAC Ex. D, AXIS Policy, Declarations, Item 3. However, AXIS is only obligated to advance defense costs "upon exhaustion of the Ironshore Policy." FAC ¶ 48. The Illinois Union Policy also has a $10,000,000 liability limit. *See* FAC Ex. F, Illinois Union Policy, Declarations, Item 6. Illinois Union, in turn, is obligated to advance defense costs only "upon exhaustion of the policy issued by AXIS." FAC ¶ 49; *see also* FAC Ex. F, amendment to Section II, Loss Payable Provision ("The Insurer shall not make payment under this policy unless and until the Underlying Policy Limits of all underlying policies have been exhausted[.]").

Westchester is obligated to indemnify and defend under its policy once Plaintiff's defense costs exceed $30,000,000. FAC Ex. E, at 5. In addition, the Westchester Policy contains a separate clause (the "Drop-Down-Clause"), which, "under certain circumstances, requires Westchester to advance defense costs of the insured even though the underlying coverage has not been exhausted." FAC ¶ 42. Under the Drop-Down-Clause, Westchester is obligated to indemnify the insured if the primary insurers refuse and if the insured formally requests indemnification from Westchester. *See* FAC Ex. E, Miscellaneous Amendments, Section 19 (Westchester "shall, upon request and if properly itemized and detailed invoices accompany the request, advance on behalf of the

4

INSUREDS . . . such DEFENSE COSTS . . . no later than ninety (90) days after the receipt by [Westchester] of such properly itemized and detailed DEFENSE COSTS invoices.").

### 3. Mr. Johnson's Insurance Claims

Plaintiff tendered the South Carolina Action to Ironshore for coverage in June 2019. FAC ¶ 51–52. On or around June 14, 2019, Ironshore acknowledged the tender, advised Plaintiff that he likely qualified as an Insured Person under the Ironshore Policy, and confirmed that it would assume its obligation to reimburse Plaintiff for his defense costs. *Id.* ¶ 53. Ironshore approved the law firm Shearman & Sterling, LLP ("Shearman") as counsel for Plaintiff but "advised that Ironshore did not consent to the proposed hourly rates for Shearman's fees." *Id.* ¶ 55. "Throughout July and August 2019, Plaintiff and Ironshore entered into negotiations over the reasonableness of Shearman's rates." *Id.* In both October 2019 and February 2020, Ironshore acknowledged its obligation to cover Plaintiff's defense costs in connection with the South Carolina Action, but Ironshore and Plaintiff "continued to negotiate the reasonableness of Shearman's fees." *Id.* ¶ 57–58.

In April 2020, Plaintiff tendered the Delaware Action to Ironshore. *Id.* ¶ 61. Ironshore acknowledged tender, and Plaintiff and Ironshore continued to negotiate over Shearman's rates. *Id.* ¶ 62–63. In July 2020, Ironshore offered to pay a fraction of the defense costs. *Id.* ¶ 64. Mr. Johnson, however, alleges that he never received payment from Ironshore. *Id.* ¶ 67. On December 23, 2020, Ironshore informed Plaintiff that on the basis of an exclusion in the Ironshore Policy, it was denying him coverage in connection with the SportCo Actions. *Id.* ¶ 69.

"[B]y March[] 2020 excess carriers AXIS and Illinois Union were put on notice that their respective policies could be implicated in connection with the [South Carolina] Action and requested information regarding Ironshore's coverage position, allocation and defense invoices." FAC ¶ 59. Plaintiff further alleges that "Plaintiff's counsel advised Ironshore and the Excess Carriers[] that Plaintiff faces tens of millions of dollars in potential liabilities in the SportCo Actions [that] would

5

trigger coverage under the Excess Policies." *Id.* ¶ 77.  Plaintiff has incurred approximately $1,000,000 in defense costs in connection with his defense in the SportCo Actions.  *Id.* ¶ 75.

### B. Procedural History

Mr. Johnson filed this action on March 8, 2021 in the Supreme Court of the State of New York, New York County.  Dkt. No. 1.  He seeks a declaration that Ironshore and the Excess Carriers are obligated to advance defense costs and indemnify him for all expenses incurred in the SportCo actions, including legal fees and the amount of any judgment or settlement.  FAC ¶¶ 91, 99, 102.  Plaintiff also brings a breach of contract claim against Westchester alleging that Westchester breached the Drop-Down-Clause of the Westchester Policy "by refusing to advance Plaintiff's defense costs in connection with the SportCo Actions." *Id.* ¶ 118.

Plaintiff also brings three claims against just Ironshore.  First, he claims that Ironshore "breached the provisions of the Ironshore Policy by refusing to provide Plaintiff with the coverage he is entitled to." *Id.* ¶ 110.  Second, he brings a claim for promissory estoppel because "Ironshore clearly and unambiguously promised Plaintiff that Ironshore would be responsible for the defense costs of Plaintiff as he qualified as an Insured Person under the Ironshore Policy" and Plaintiff reasonably relied upon that promise.  *Id.* ¶¶ 122, 123.  And third, Plaintiff brings a claim for unfair business practices against Ironshore under Section 349 of the New York General Business Law.  *Id.* ¶ 131.

Ironshore removed the case to this Court on April 14, 2021.  Dkt. No. 1.  AXIS and Illinois Union filed motions to dismiss on June 7, 2021.  Dkt. Nos. 33, 34.  On June 28, 2021, in lieu of filing an opposition to the motions to dismiss, Mr. Johnson filed an amended complaint (the "FAC").  On July 28, 2021, Defendants all moved to dismiss the FAC.  Dkt. Nos. 47, 49, 50.  Ironshore sought dismissal of Plaintiff's promissory estoppel and Unfair Business Practices claims.  *See* Dkt. No. 49-1 (the "Ironshore Mot.").  AXIS, Illinois Union, and Westchester all moved to

dismiss because Plaintiff failed to allege a ripe controversy as to the Excess Carriers. *See* Dkt. No. 47-1 (the "AXIS Mot."); Dkt. No. 51 (the "Westchester and Illinois Union Mot."). Westchester also sought dismissal of Plaintiff's breach of contract claim against it because Plaintiff failed to adequately plead performance. Westchester and Illinois Union Mot. at 10.

Plaintiff filed a consolidated opposition brief in response to all of the defendants' motions on September 3, 2021. Dkt. No. 55 ("Opp'n"). Defendants filed their replies shortly thereafter. Dkt. No. 57 ("AXIS Reply"); Dkt. No. 58 ("Westchester and Illinois Union Reply").

## II. LEGAL STANDARD

### A. Rule 12(b)(6)

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, a defendant may move to dismiss a plaintiff's claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion to dismiss under Rule 12(b)(6), the Court accepts as true all well-pleaded factual allegations and draws all inferences in the plaintiff's favor. *See Palin v. N.Y. Times Co.*, 940 F.3d 804, 809-10 (2d Cir. 2019) (quoting *Elias v. Rolling Stone LLC*, 872 F.3d 97, 104 (2d Cir. 2017)); *Chase Grp. All. LLC v. City of New York Dep't of Fin.*, 620 F.3d 146, 150 (2d Cir. 2010). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts "do not look beyond 'facts stated on the face of the complaint, documents appended to the complaint or incorporated in the complaint by reference, and matters of which judicial notice may be taken.'" *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (ellipses and citation omitted).

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially

plausible when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

"To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). Although Rule 8 "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

### B. Rule 12(b)(1) and the Declaratory Judgment Act

"A district court properly dismisses a claim under Rule 12(b)(1) for lack of subject matter jurisdiction if the court lacks the statutory or constitutional power to adjudicate it." *Cortlandt Street Recovery Corp. v. Hellas Telecomm.*, 790 F.3d 411, 416–17 (2d Cir. 2015) (internal quotations and citations omitted). "A party seeking a declaratory judgment bears the burden of proving that the district court has jurisdiction." *E.R. Squibb & Sons, Inc. v. Lloyd's & Companies*, 241 F.3d 154, 177 (2d Cir. 2001). "Jurisdiction exists only if there is an 'actual controversy,' which has been defined as one that is 'real and substantial admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *Id.* (quoting *Olin Corp. v. Consolidated Aluminum Corp.*, 5 F.3d 10, 17 (2d Cir. 1993) (internal citations omitted).

The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). "In the context of an insurance dispute, a declaratory judgment action may be ripe even if the insured has not yet incurred any liability." *Fed. Ins. Co. v. SafeNet, Inc.*, 758 F. Supp. 2d 251, 262 (S.D.N.Y. 2010). In fact, "'litigation over insurance coverage has become the paradigm for asserting jurisdiction despite future contingencies that will determine whether a controversy ever actually becomes real.'" *E.R. Squibb & Sons, Inc.*, 241 F.3d at 177 (quoting *Associated Indemnity Corp. v. Fairchild Indus., Inc.*, 961 F.2d 32 (2d Cir. 1992)). "That the liability may be contingent does not necessarily defeat jurisdiction of a declaratory judgment action. Rather, courts should focus on the practical likelihood that the contingencies will occur." *Id.* (quoting *Associated Indemnity Corp.*, 961 F.2d at 35). "Thus, where liability is contingent, courts in this circuit traditionally examine the 'practical likelihood' that there will be some type of settlement or judgment against the insurer. . . . the 'practical likelihood' standard applies in an action between an insured and its excess insurer, even where primary coverage has not been exhausted." *Fed. Ins. Co.*, 758 F. Supp. 2d at 262 (collecting cases) (citing *E.R. Squibb & Sons, Inc.*, 241 F.3d at 177–78).

## III.   DISCUSSION

### A.   Plaintiff's Promissory Estoppel and Unfair Business Practices Claims

At Plaintiff's request, his promissory estoppel and unfair business practices claims against Ironshore are dismissed. In Plaintiff's consolidated opposition to the motions to dismiss, he writes that his "Promissory Estoppel and Unfair Business Practices Pursuant to New York General Business Law Section 349 . . . against Defendant Ironshore are withdrawn as Ironshore has recently made payment to Plaintiff's counsel in line with prior communications." Opp'n at 1 n.1. Therefore, the Court grants Ironshore's motion to dismiss Counts Six and Seven of the FAC.

9

### B.     Plaintiff's Breach of Contract Claim Against Westchester

Plaintiff has failed to state a claim for breach of contract. To properly plead a claim for breach of contract under New York law, Plaintiff must allege: "(i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages." *Orlander v. Staples, Inc.*, 802 F.3d 289, 294 (2d Cir. 2015) (quoting *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 142 (2d Cir. 2011)). Under New York law, a condition precedent is "an act or event, other than a lapse of time, which, unless the condition is excused, must occur before a duty to perform a promise in the agreement arises." *Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.*, 86 N.Y.2d 685, 690 (1995) (citing Calamari and Perillo, Contracts § 11-2, at 438 [3d ed]). New York courts have recognized "that the use of terms such as 'if,' 'unless' and 'until' constitutes 'unmistakable language of condition.'" *MHR Capital Partners LP v. Presstek, Inc.*, 12 N.Y.3d 640, 645 (2009) (quoting *Oppenheimer & Co.*, 86 N.Y.2d at 691).

"At the motion to dismiss stage, a district court may dismiss a breach of contract claim only if the terms of the contract are unambiguous." *Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp.*, 830 F.3d 152, 156 (2d Cir. 2016). "A contract is unambiguous . . . if 'the contract language has a definite and precise meaning . . . [and] there is no reasonable basis for a difference of opinion.'" *Id.* at 157 (quoting *Chesapeake Energy Corp. v. Bank of N.Y. Mellon Trust Co.*, 773 F.3d 110, 114 (2d Cir. 2014)).

As a threshold matter, the Court finds that the Drop-Down-Clause in the Westchester Policy is unambiguous. Neither party argues that the pertinent provision is ambiguous. *See* Westchester and Illinois Union Mot. at 10–11 (arguing that the FAC "makes no allegation that Plaintiff has provided the required notice or documentation to Westchester"); Opp'n at 5–6 (disputing only that the FAC has insufficiently pleaded performance). The Court has reviewed the relevant policy

10

language, which is set forth in the margin below,[2] and agrees with the parties that it is unambiguous and that there is no reasonable basis for a difference of opinion as to its meaning.

The Court dismisses Plaintiff's breach of contract claim again Westchester because he has not adequately pleaded that he provided Westchester with notice as required under the Drop-Down-Clause. The Westchester Policy states that Westchester is required to advance defense costs to Plaintiff "*upon* request and *if* properly itemized and detailed invoices accompany the request." FAC Ex. E, Miscellaneous Amendments, Section 19 (emphasis added). Plaintiff fails to allege that he provided Westchester with the required notice. He makes only the conclusory allegation that "Plaintiff has complied with all the conditions of the Westchester Policy," without alleging any facts about whether notice was given to Westchester and, if so, whether it contained the itemized and detailed invoices as required under the Drop-Down-Clause. *Id.* ¶ 117–119. Plaintiff provides no "factual enhancement" to his conclusory statements, which read as a mere "formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).[3] Therefore, Plaintiff has not sufficiently alleged that Westchester breached its obligation to advance defense costs. Plaintiff's breach of contract claim against Westchester is therefore dismissed.

## C. Plaintiff's Declaratory Judgment Act Claims

Because Plaintiff fails to allege that AXIS or Illinois Union has a present duty to advance defense costs or that there is a practical likelihood that their respective policies will be triggered,

---

[2] **ADVANCEMENT OF DEFENSE COSTS**: Except in those instances when the INSURER has denied liability for the CLAIM because of the application of one or more coverage issues, if the COMPANY refuses or is financially unable to advance DEFENSE COSTS, and if the insurer(s) of the UNDERLYING INSURANCE fails or refuses to advance such costs as provided in Clause 1(a) above, the INSURER shall, upon request and if properly itemized and detailed invoices accompany the request, advance on behalf of the INSUREDS, or any of them, such DEFENSE COSTS on a current basis, but no later than ninety (90) days after the receipt by the INSURER of such properly itemized and detailed DEFENSE COSTS invoices. FAC Ex. E, Westchester Policy, Section 19, Clause 9.
[3] Plaintiff's opposition appears to concede that he did not in fact provide the requisite notice to Westchester in advance of filing his breach of contract claim. He attaches to his opposition a July 20, 2021 letter that appears to contain the notice and itemized bills required under the Drop-Down-Clause. In doing so, Plaintiff seems to acknowledge that he had not made the required notice to Westchester at the time he filed his complaint on June 28, 2021.

Plaintiff does not allege a ripe controversy. However, Plaintiff has alleged a ripe controversy as to Westchester's duty to advance defense costs. "'Courts often distinguish between the duty to defend and the duty to indemnify in determining whether each issue posed in a declaratory judgment action is ripe for adjudication,' because the duties are usually triggered by different conditions." *Lafarge Canada Inc. v. Am. Home Assurance Co.*, No. 15-CV-8957 (RA), 2018 WL 1634135, at *4 (S.D.N.Y. Mar. 31, 2018) (quoting *Atl. Cas. Ins. Co. v. Value Waterproofing, Inc.*, 918 F. Supp. 2d 243, 261 (S.D.N.Y. 2013)). Unlike the duty to defend, which is generally "triggered by the filing of a lawsuit," the duty to indemnify is "triggered by a determination of liability." *Id.* (quoting Atl. Cas. Ins. Co., 918 F. Supp. 2d at 261). The Court will therefore first address whether Plaintiff has alleged a ripe controversy as to the Excess Carriers' duty to defend in the SportCo actions.

    **i. Duty to Defend**

        **a. The AXIS Policy**

Plaintiff has not alleged that AXIS has a present duty to advance defense costs. Plaintiff does not dispute the significance of the exhaustion language in the AXIS Policy, which states that AXIS's coverage duty does not attach until Plaintiff's primary insurance policy, which has a $10,000,000 liability cap, is exhausted. *See* FAC Ex. D, AXIS Policy, Section I as amended by Endorsement No. 4; Opp'n at 3-4. Thus, AXIS is obligated to advance defense costs and indemnify "only after" the insured's costs exceed the $10,000,000 limit of the Ironshore Policy. *Id.* Plaintiff alleges that he has incurred "over a million dollars of defense costs[.]" FAC ¶ 75. Therefore, Plaintiff has not alleged that AXIS has a present obligation to Plaintiff.

Nor does Plaintiff allege a practical likelihood that the AXIS Policy will be triggered. To the extent that AXIS will ever be obligated to advance defense costs, that obligation is triggered only when at least $10,000,000 in underlying liability has been reached, which means that Plaintiff's costs would have to multiply ten-fold before AXIS's duty to defend kicks in. Plaintiff alleges that he was

named as a defendant in two underlying claims but has already been dismissed from the South Carolina Action. FAC ¶ 18. His motion to dismiss the Delaware Action is pending. *Id.* at ¶ 26. Therefore, Plaintiff has not alleged a practical likelihood of a ten-fold increase in defense costs.

Plaintiff asserts that "the worst case scenario potential defense and indemnity costs runs in the hundreds of millions," but this allegation seems to be based on the alleged $188,000,000 in damages in the South Carolina Action, from which Plaintiff has already been dismissed. FAC ¶ 95. Even assuming that there are hundreds of millions in potential damages at stake in the remaining Delaware Action, which Plaintiff has not alleged, he offers no facts to demonstrate a "practical likelihood" that his defense costs will exceed $10,000,000. *See Maryland Casualty Co. v. W.R. Grace & Co.*, No. 88 CIV. 2613 (JSM), 1996 WL 306372, at *5 (S.D.N.Y. Jun. 7, 1996) (dismissing some excess insurers' policies because the court determined, after reviewing the insured's defense and indemnity costs at that point, that there was not a practical likelihood that the insured would reach the respective attachment points of those policies). The fact that Plaintiff has already been dismissed from the high dollar claims in the South Carolina Action makes it unlikely that the $10,000,000 threshold will be met.

Plaintiff's newly raised allegation in opposition to the motions to dismiss that the Ironshore liability limit is an aggregate limit and that Ironshore has also advanced defense costs for other directors of SportCo changes nothing. First, this allegation is absent from the FAC. Plaintiff cannot amend his complaint through new allegations in an opposition brief. *See Chen Coal Technologies, Inc. v. Leidos, Inc.*, 377 F. Supp. 3d 303, 321 (S.D.N.Y. 2019) (it is "axiomatic that a complaint cannot be amended by a brief in opposition to a motion to dismiss" (quoting *LLM Bar Exam, LLC v. Barbri, Inc.*, 271 F. Supp. 3d 547, 580 (internal quotation marks and citation omitted))). Second, even if this bare allegation that Ironshore is also paying defense costs on behalf of three other defendants had been included in the FAC, it is too conclusory to plead a practical likelihood that Ironshore's liability

limit will be reached. Plaintiff provides no factual enhancement as to how much these other insured defendants have incurred in legal fees. Nor does he indicate whether they have been dismissed from or have moved to dismiss either the South Carolina Action or the Delaware Action. Thus, the Court cannot find that Plaintiff has pleaded a practical likelihood of AXIS's policy being triggered. The Court therefore dismisses Plaintiff's claim against AXIS for advancement of defense costs.

### b. The Illinois Union Policy

Likewise, Plaintiff has not demonstrated that Illinois Union has a present obligation to advance defense costs or that there is a practical likelihood that Illinois Union's duty to advance defense costs will be triggered. Illinois Union is not obligated to advance Plaintiff defense costs "until the Underlying Policy Limits of all underlying policies have been exhausted." FAC Ex. F, Illinois Union Policy, amendment to Section II, Loss Payable Provision. The Illinois Union Policy therefore attaches once $20,000,000 of underlying liability has been exhausted. *Id.*, Declarations, Item 7. Thus, for essentially the same reasons that Plaintiff has failed to adequately plead a ripe claim against AXIS, Plaintiff fails to plead a practical likelihood that Illinois Union's Policy will be triggered. Plaintiff has not alleged that his defense costs will exceed $20,000,000. Illinois Union's motion to dismiss Plaintiff's request for declaratory judgment as to the advancement of defense costs is granted.

### c. The Westchester Policy

However, Plaintiff has plausibly pleaded a practical likelihood that Westchester will have a duty to defend Plaintiff in the SportCo Actions. Plaintiff alleges that Ironshore has refused to advance defense costs. "[O]n or around December 23, 2020, Ironshore informed Plaintiff for the first time that he was not entitled to coverage under the Ironshore Policy, and that Ironshore would not fund or reimburse any of his defense costs" on the basis of an exclusion in the Ironshore Policy.

FAC ¶ 69. In May of 2021, under a complete reservation of rights, Ironshore agreed "to make a partial payment of certain defense invoices." *Id.* at ¶ 71.

Plaintiff alleges that under the Drop-Down-Clause, Westchester has an obligation to advance defense costs "if the underlying insurers refuse to do so." *Id.* at ¶ 115. While, as described above, Plaintiff has not plausibly alleged that this clause has been breached, since Plaintiff does not allege that he has performed his obligation to provide Westchester with the required notice, Plaintiff does allege that there is a practical likelihood that this clause will be triggered. Plaintiff alleges that Ironshore has refused to advance defense costs and that this will trigger Westchester's obligations under its policy. Therefore, as alleged in the FAC, the declaratory judgment action as to the advancement of defense costs by Westchester is "real enough to make this an actual case or controversy." *Empire Fire & Marine Ins. Co. v. Elrac, Inc.*, No. 04 CIV. 10315 (GEL), 2006 WL 3734308, at *3 (S.D.N.Y. Dec. 18, 2006).

However, "[f]inding that a ripe, justiciable action exists does not end the inquiry. 'Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants.'" *Lafarge Canada Inc.*, 2018 WL 1634135, at *4 (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995)). "In order to decide whether to entertain an action for declaratory judgment, [the Second Circuit has] instructed district courts to ask: (1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty." *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 389 (2d Cir. 2005). Other relevant factors include

> (1) whether the proposed remedy is being used merely for "procedural fencing" or a "race to res judicata"; (2) whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court; and (3) whether there is a better or more effective remedy.

*Dow Jones & Co. v. Harrods Ltd.*, 346 F.3d 357, 359–60 (2d Cir. 2003).

15

Here, the Court finds that exercising its discretion to entertain Mr. Johnson's action for declaratory judgment as to the advancement of defense costs "will serve a useful purpose in clarifying" the legal issues involved. *Duane Reade*, 411 F.3d at 359.  In particular, it will help clarify Westchester's obligations under the Drop-Down-Clause.  Plaintiff alleges that Ironshore has refused to advance fees in connection with the SportCo actions and that its failure to do so may trigger Westchester's obligation and that Westchester has, as of yet, not advanced these costs.  Therefore "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Olin Corp.*, 5 F.3d at 17.  Plaintiff's claim for a declaration that Westchester must advance defense costs under the Westchester Policy should proceed.

    **ii.**       **Duty to Indemnify**

Plaintiff has failed to show that his claims for declaratory judgment as to the Excess Carriers' obligation to indemnify are ripe.  As explained above, "in insurance cases where liability is merely contingent, there must be a 'practical likelihood'" that the contingencies will occur. *Lafarge Canada Inc.*, 2018 WL 1634135, at *5 (quoting *Fed. Ins. Co.*, 758 F. Supp. 2d at 262).  "[T]he duty to indemnify 'turns not on the allegations of the complaint but on the actual liabilities as borne out by the facts.'" *Id.* (quoting *Travelers Prop. Cas. Corp. v. Winterthur Int'l*, No. 02-CV-2406 (SAS), 2002 WL 1391920, at *6 (S.D.N.Y. June 25, 2002)).  It is therefore generally "triggered by a determination of liability." *Lafarge Canada Inc.*, 2018 WL 1634135 at *4 (internal quotations and citation omitted).  "Claims concerning indemnification obligations . . . are not ripe for adjudication until liability has been imposed upon the party to be indemnified." *FSP, Inc. v. Societe Generale*, No. 02-CV-4786 (GBD), 2003 WL 124515, at *4 (S.D.N.Y. Jan. 14, 2003).  Where "key facts can and will be established in an underlying proceeding—the lack of ripeness is palpable." *Travelers Prop. Cas.*

*Corp.*, 2002 WL 1391920 at *6 (dismissing a declaratory judgment action where the court in the underlying suit had not yet determined factual issues implicating potential liability).

Because key issues of coverage and liability have yet to be determined in the Delaware Action, Plaintiff's indemnification controversy is not yet ripe. As there is not yet a ripe controversy as to AXIS's and Illinois Union's duties to defend, there is clearly no ripe controversy as to their duties to indemnify what is, at this point, a highly speculative and contingent future judgment in the Delaware Action. There are also several issues currently under review by the court in the Delaware Action that directly implicate whether Plaintiff would ever be entitled to indemnification by the Excess Carriers. For example, as the Excess Carriers note, the complaint in the Delaware Action alleges that Plaintiff received various fraudulent transfers for his own personal enrichment, including a salary increase and a bonus payment, allegedly with the intent to defraud creditors. FAC Ex. B at ¶¶ 56, 179, 232, 280. If this is determined to be true, it could implicate exclusions under the Ironshore Policy and therefore affect Plaintiff's coverage.[4] Such findings by the Delaware court could also implicate conditions in the Excess Insurers' policies.[5] For these reasons, Plaintiff may be precluded from coverage depending on the final adjudication in the ongoing Delaware Action. Thus, key issues of coverage and liability remain to be determined.[6]

---

[4] Section III(a) of the Ironshore Policy provides in pertinent part:
    Regarding all Insuring Agreements, the Insurer shall not pay **Loss:**
    (1) of an **Insured** on account of any **Claim** alleging, based upon, arising out of or attributable to any intentionally dishonest, deliberately fraudulent or deliberately criminal act or omission . . . by such **Insured**, if established by a final, non-appealable adjudication in the underlying proceeding;
    (2) of an **Insured** on account of any **Claim** alleging, based upon, arising out of or attributable to the gaining of any personal profit, renumeration or advantage to which such **Insured** was not legally entitled if established in a final non-appealable adjudication in the underlying proceeding . . .
FAC Ex. C, Ironshore Policy, Section III(a)(1)-(2).

[5] The Westchester Policy, for instance, does not cover "any payment for LOSS in connection with that portion of any CLAIM based upon or attributable to the INSUREDS having gained any personal profit or remuneration to which they were not legally entitled, or having committed any deliberate fraud or deliberate criminal act." FAC Ex. E, at Section 3.

[6] The fact that the Drop-Down-Clause of the Westchester Policy makes the advancement of defense costs ripe for adjudication changes nothing about the ripeness of Plaintiff's claim against Westchester for indemnification. The Drop-Down-Clause applies only to the advancement of defense costs, not to the indemnification of any settlement or judgement. *See* FAC Ex. E, Westchester Policy, Section 19, Clause 9. Westchester's indemnification obligations are

The question of ripeness is determined on a case-by-case basis. *See Lafarge Canada Inc.*, 2018 WL1634135, at *5. The specific circumstances here, including the early stage of the litigation and the as-yet-undetermined issues of liability and coverage, do not support the existence of a ripe controversy as to the duty to indemnify. At this stage, "the lack of ripeness is palpable." *Travelers Prop. Cas. Corp.*, 2002 WL 1391920, at *6. Therefore, the Court dismisses Plaintiff's claims for indemnification against AXIS, Illinois Union, and Westchester.

## IV.     LEAVE TO AMEND

The Court grants Plaintiff leave to replead his breach of contract claim against Westchester. *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("It is the usual practice upon granting a motion to dismiss to allow leave to replead."); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). While leave may be denied "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party[,]" those circumstances do not apply in this case. *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007)). Any amended complaint must be filed no later than fourteen days from the date of this order.

Plaintiff's declaratory judgment claims against the Excess Carriers are dismissed without prejudice. *See Certain Underwriters at Lloyd's, London v. St. Joe Mins. Corp.*, 90 F.3d 671, 676 (2d Cir. 1996) (finding that the current controversy was not "justiciable and ripe" and therefore affirming dismissal of the complaint without prejudice which "leaves open the possibility that at some future time a more complete development of the facts might lead to a different result."). The Court does not grant Plaintiff leave to amend the complaint with respect to these claims at this time, because the claims are not yet ripe.

---

therefore triggered only when Plaintiff's total liability exceeds $30,000,000. For the reasons described above, Plaintiff has failed to plausibly plead a practical likelihood that such liability will be reached.

## V. CONCLUSION

Plaintiff's claims for declaratory judgment as to the advancement of defense costs are dismissed without prejudice as to AXIS and Illinois Union. The Court denies Westchester's motion to dismiss Plaintiff's claim for declaratory judgment as to the advancement of defense costs as to it. Plaintiff's claims for declaratory judgement for indemnification are dismissed against all the Excess Carriers without prejudice. Plaintiff's breach of contract claim against Westchester is dismissed because Plaintiff failed to allege performance under the contract. The Court also dismisses Counts Six and Seven against Ironshore at the request of Plaintiff.

The Clerk of the Court is directed to remove AXIS and Illinois Union from the caption of the case and to terminate the motions pending at Dkt. Nos. 47, 49 and 50.

SO ORDERED.

Dated: March 28, 2022  
New York, New York

_____  
GREGORY H. WOODS  
United States District Judge